**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FRED J. JACKSON, JR.,**<br><br>Plaintiff,<br><br>v.<br><br>**SCOTT BESSENT, Secretary of the Treasury,**<br><br>Defendant. | Case No. 1:25-cv-3551 (TNM) |

## MEMORANDUM OPINION

Fred Jackson, proceeding *pro se*, claims he had a job offer to work at the Treasury Department until officials discriminated and retaliated against him based on race by revoking the job offer. So he sues the Secretary of the Treasury for violating federal employment law. Am. Compl., ECF No. 14. The Secretary moves to dismiss his Complaint for failure to state a claim. Def.'s Mot., ECF No. 15. Because Jackson's Complaint is too vague to sustain his claims, the Court will grant the Secretary's motion.

### I.

According to Jackson's Amended Complaint, he received a tentative offer to work for the Treasury as an Information Technology Specialist in early September 2024. Am. Compl. ¶ 16. The offer was conditioned on his successful completion of a background check. *Id.* ¶ 17.

Jackson had some hesitations about the hiring process. He, for instance, voiced "concerns about the nature of the background investigation" to unnamed agency officials. *Id.* ¶ 18. He also "communicated concerns" to unknown individuals about "possible discrimination" and his "prior EEO activity." *Id.* ¶ 19. Indeed, he told agency officials that he "believed" he "may" need to contact an Equal Employment Office ("EEO") counselor about "possible"

discrimination, *id.* ¶ 21, and he later confirmed that he "desired" EEO counseling about the possible discrimination, *id.* ¶ 22. Somewhere along the way, Jackson mentioned to the unnamed agency officials that he "believed he had experienced discrimination associated with his Korean heritage" at some point. *Id.* ¶ 24.

As Jackson tells it, the agency officials involved in his hiring process "were aware" that he previously "engaged in protected EEO activity." *Id.* ¶ 27. Despite all this back-and-forth, on October 18, 2024, Jackson received "interim approval to Enter on Duty," which he "understood" to be an official employment offer, meaning that he could start working. *Id.* ¶¶ 28–29. But Jackson was not in the clear, as it turns out. Four days later, "Defendant" (the Secretary) rescinded Jackson's tentative job offer. *Id.* ¶ 31.

The rescission prompted Jackson's lawsuit. In his Amended Complaint, Jackson sues the Secretary for unlawful race discrimination and retaliation under Title VII of the Federal Civil Rights Act of 1964. *Id.* at 4–5. He seeks backpay, damages, among other relief. *Id.* at 5–6. The Secretary moves to dismiss. Def.'s Mot. Dismiss, ECF No. 15. That motion is now ripe.

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But the Court need not credit legal

conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. And while a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (cleaned up). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

More, the Court must construe a *pro se* complaint liberally, keeping in mind that complaints filed by *pro se* litigants are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even *pro se* litigants must meet the minimum pleading standards required by the Federal Rules and the Constitution. *See Yellen v. U.S. Bank, Nat'l Ass'n*, 301 F. Supp. 3d 43, 47 (D.D.C. 2018).

**III.**

Neither Jackson's discrimination claim nor his retaliation claim meet these requirements.

*Discrimination.* For his unlawful race discrimination claim under Title VII, Jackson needs to allege that: (1) he suffered an adverse employment action; and (2) the action was taken because of his protected status. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008). "The factual detail required" to plead discrimination "can be quite limited." *See Hill v. Bd. of Trs. of the Univ. of D.C.*, 146 F. Supp. 3d 178, 184 (D.D.C. 2015). That said, a plaintiff must "plead sufficient facts to show a plausible entitlement to relief," *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011), as the court "cannot create something out of nothing," *Arnold v. Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017) (cleaned up).

Jackson has not done enough. His theory goes like this. During the hiring process, Jackson "disclosed information regarding his race, ethnicity, and Korean ancestry." Am. Compl. ¶ 23. That information somehow made its way to "[a]gency officials involved in the hiring process." *Id.* ¶ 25. After that point, Jackson was approved to begin working, but then the

Secretary "rescinded [Jackson's] tentative offer of employment." *Id.* ¶ 31. Put together, Jackson alleges that because some agency officials knew about his race and national origin, the Secretary revoked his job offer because of Jackson's race and national origin.

This barebones theory is insufficient. Jackson presents no facts from which one could infer that race or national origin was a factor in the Secretary's treatment of him. *See Fillmore v. AT&T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 4 (D.D.C. 2015) (requiring plaintiffs to "present facts from which an inference of discrimination may be drawn." (cleaned up)). For example, Jackson does not point to any "statement" from the individuals who revoked his offer "that itself shows racial . . . bias in the decision." *See Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011). He provides no detail about irregular background check or hiring processes. *See Porter v. Shah*, 606 F.3d 809, 816 (D.C. Cir. 2010) (suggesting that hiring practices "irregular or inconsistent" with "established policies" could give rise to an inference of discrimination (cleaned up)). He never suggests that other job applicants of different races were treated more favorably. *See Brown v. Sessoms*, 774 F.3d 1016, 1022–23 (D.C. Cir. 2014) (explaining that a plaintiff can establish an "inference of discrimination by showing that [he] was treated differently from similarly situated employees who are not part of the protected class" (cleaned up)). Jackson simply asserts that unnamed officials knew about his race and heritage, so another official revoked his employment offer. That is not enough.[1]

---

[1] At one point, the D.C. Circuit applied a more permissive causation standard that required no more than an allegation that "I was turned down for a job because of my race." *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114–15 (D.C. Cir. 2000) (cleaned up); *id.* (explaining that "complaints need not plead law or match facts to every element of a legal theory," or "make out a prima facie case of discrimination" (cleaned up)). But this Court agrees with the others in this district that have concluded that the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662, (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), abrogated *Sparrow*, *see, e.g.*, *Easaw v. Newport*, 253 F. Supp. 3d 22, 29, n.4 (D.D.C. 2017), and therefore mere

To be sure, at the motion-to-dismiss stage, a plaintiff need not plead facts supporting every element of a prima facie case or anticipate the non-discriminatory reasons that may be proffered by his employer for its actions. *See id.* But taken collectively, a plaintiff must plead facts that make out a "reasonable and plausibly" supported "inference[] of discrimination . . . ." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017); *accord Brown v. FERC*, No. 24-2538, 2025 WL 894226, at *6 (D.D.C. Mar. 24, 2025) (faulting discrimination pleadings for not including "evidence *linking* [the] action to a protected trait or activity"). Because Jackson supplies no factual detail about the discrimination he alleges, he fails to plausibly support his claims. The discrimination claims accordingly falls short.

*Retaliation.* To plead unlawful retaliation, Jackson must allege: (1) protected activity, (2) a materially adverse action, and (3) causation. *Steele v. Schafer*, 535 F.3d 689, 695–96 (D.C. Cir. 2008). The retaliation standard reaches any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (cleaned up).

Jackson falters at the first step—establishing a protected activity. "Not every complaint" to an employer or to the EEO "garners its author protection under Title VII." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination." *Id.* And the "alleged[ly] discriminatory treatment" underlying the complaint "cannot be generic." *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91 (D.D.C. 2006). Rather, "the plaintiff must be opposing an employment practice made unlawful by the statute under which [he] has filed [his]

---

"formulaic recitation[s] of the elements of a cause of action will not do," *Brown*, 774 F.3d at 1020 (cleaned up).

claim of retaliation." *Id.* at 91–92. More, "[c]onclusory assertions that [a plaintiff] experienced retaliation for filing complaints . . . without describing the nature of [those] complaints, or identifying the persons to whom [he] directed [his] complaints, or indicating when [he] made them, fall short of stating a viable claim." *See Yisrael v. Dep't of Lab.*, No. 23-01454, 2025 WL 832807, at *3 (D.D.C. Mar. 17, 2025) (cleaned up).

Jackson alleges too little to launch a retaliation claim. As Jackson put it, he "communicated concerns" to unknown individuals about his "prior EEO activity" during his hiring process. Am. Compl. ¶ 19. He repeats that much a few times. *Id.* ¶ 20 (alleging that during "communications occurring on or about September 12, 2024, and September 19, 2024, Plaintiff informed Agency officials of prior EEO activity"); *id.* ¶ 25 (stating that Jackson's "communications" about his "EEO activity" were transmitted to officials in charge of hiring him); *id.* ¶ 27 ("Agency officials involved in the hiring process were aware that Plaintiff had engaged in protected EEO activity.").

Other tidbits are similarly vague. Jackson mentions that he told officials that he "may need to contact an EEO counselor" about "possible" discrimination without any specifics. Am. Compl. ¶ 21. He also "communicated" to an unknown person that he "desired" EEO counseling about unknown events. *Id.* ¶ 22; *see id.* ¶ 26 (referring to Jackson's "intent" to seek EEO counseling without more).

The trouble for Jackson is, nowhere in those allegations does he detail the nature of his EEO activity, or the alleged discrimination that prompted it. Indeed, at one point, it appears that Jackson told officials about EEO activity from a prior job, or at least from some time before this hiring process began. *See id.* ¶ 20 (noting that twice in September, Jackson told officials about his "prior EEO activity"). At another point, however, Jackson suggests that he "engaged" in

protected EEO activity in late September, not merely that he reported "prior" activity at that time. *See id.* ¶ 33 (stating that Jackson "engaged in protected EEO activity" approximately "one month" before his job offer was revoked in late October).

On top of the murky timeline, Jackson never reveals what discriminatory act prompted his EEO activity. Did the officials avoid hiring Jackson because he had a reputation for filing EEO complaints at his old job? *See* EEOC, No. 915.004, Enforcement Guidance on Retaliation and Related Issues § II.C.3 (2016) (noting that if a manager declined to hire an applicant after hearing that the applicant was a "troublemaker" at her old job because she sued for harassment while there, the manager could be liable for retaliation). Was the background check process itself the problem that called for his EEO complaints? *See Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 185 (D.D.C. 2016) (addressing "protected activity" that involved "complaining about allegedly discriminatory hiring practices"). If so, why? Without any detail about who, what, or when, Jackson's allegations are too sparse to sustain his claim. And recall that legal conclusions masquerading as factual allegations are unacceptable. *See Iqbal*, 556 U.S. at 678. But the Amended Complaint, infused with buzzwords like "discrimination" and "retaliation" without details supporting these conclusions, flunks this standard.

* * *

Because Jackson has not plausibly alleged either a discrimination claim or a relation claim, dismissal is appropriate. That said, the Court finds that "the allegation of other facts consistent with the" Amended Complaint "could . . . possibly cure the deficiency," *Rudder v. Williams*, 666 F.3d 790, 794–95 (D.C. Cir. 2012) (cleaned up), so it will dismiss it without prejudice and grant Jackson the chance to file more detailed pleadings, *see id.* (explaining the high standard for dismissing a deficient complaint with prejudice).

Jackson is cautioned to fully include all relevant factual allegations and evidence if he files another complaint. The Court has now rejected his overly vague pleadings twice, so Jackson should not expect another bite at the apple. *Accord Gallo v. District of Columbia*, 659 F. Supp. 3d 21, 26 (D.D.C 2023); *see also Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray*, 424 F. Supp. 3d 26, 36 (D.D.C. 2020) (denying leave to re-amend complaint after repeated failures to show standing), *aff'd*, 848 F. App'x 428 (D.C. Cir. 2021).

**IV.**

For these reasons, Defendant's Motion to Dismiss will be granted and Jackson's Amended Complaint will be dismissed without prejudice. A separate Order will issue today.

2026.09.30
11:07:44 -04'00'

Dated: September 30, 2026

TREVOR N. McFADDEN, U.S.D.J.